May it please the court, counsel. My name is Antonio Salazar. I'm here on behalf of the petitioner Kadeem Hussain, who is a citizen of Pakistan who is presenting a claim of religious persecution. By their nature, the courts have consistently recognized that asylum claims are to a large extent dependent on the credibility of the claimant. In this particular case, that is particularly so because despite substantial evidence of past persecution in this case, which included the petitioner's testimony that although raised as a Sunni Muslim, he converted in 1990 to the Shia Muslim minority religion, that he for these actions was barred from his village by the soldiers of Islam. He moved to another village where he became a leader of the Shia religion in that village. He was arrested in 1990. During this period of time, his parents' home was burned down in his village where he lived originally, and then they moved in with him. In 1996, he was arrested and detained and beaten for four months by the police and accused of causing secular unrest. And throughout this period of time, he was subjected to persecution based on his Shia religion, both by the police and by members of the majority Sunni religion and the soldiers of Islam. Going back to my earlier statement, this is an unusual case because it's unusually well documented. Many times these cases are presented and there's no supporting documentation. In this instance, supporting documentation showed that he was in fact registered as a Shia Muslim, that he was in fact a leader of the local Shia Muslim groups. That he had been arrested and detained by the police. There's even a newspaper article in the administrative record in which the reporter indicates that Mr. Hussain had been arrested and detained for about four or five months and had been badly treated by the police, and that an arrest warrant had been issued in 1997, which is the year that he left and came to the United States, for an arrest warrant. This is a case of violating a provision for speaking badly of Mohammed. His testimony was corroborated by his sister and the documents, and she was then living in the United States as a permanent resident alien. She was in the process of getting a divorce, and the adverse witness against Mr. Hussain was her estranged husband, for which she had obtained a restraining order. And right after she obtained the order, he wrote to immigration and said that he would be an adverse witness against Mr. Hussain. At the end of his testimony, the judge never made specifically any credibility findings. What he stated was that having heard the testimony, he was choosing the testimony of the ex-brother-in-law over the testimony of the petitioner and his sister, never making any reference to the substantial documentation that supported the petitioner's position. So how this comes before the Court, then, is whether substantial evidence supports what is essentially an indirect credibility, adverse credibility finding by the immigration judge. Let me ask you this. The I.J. said, I will accept the testimony of Mr. Chaudhry over that of the Respondent and his sister. I think it is important to note that when Mr. Chaudhry, who was the brother-in-law? Yes. Wrote his letter to the immigration service, commencing the investigation. The fact that he applied for asylum in Canada was not known in terms of the false statement on the 589 that no such application had been made. The fact that investigation confirmed this material omission submitted by the Respondent to other assertions in the letter and the testimony of Mr. Chaudhry, that the Respondent has not been truthful. Now, that gives a – it seems to me that gives a – states that the brother-in-law's testimony was corroborated and a reason for why the I.J. accepted his testimony over your client's now – and the sister. Now, what – do you disagree with that? Well, Your Honor, the cases are quite clear that issues as to credibility factors, et cetera, the ones that the Court should focus on are those that go to the heart of the asylum claim. Here, whether or not he applied previously for asylum in Canada, prior to applying for asylum in the United States, it would be our position that that would not go to the heart of his claim. The brother-in-law did not dispute any of what I related that occurred to the client. Okay. So you don't disagree with the fact that the – that what the I.J. said as to the reasons why he was accepting one over the other. You just say that what he's – the discrepancies don't go to the heart of the claim. Exactly, Your Honor. And even subsequent authority, last year the Court decided Dean v. Ashcroft, in which the Court seemed to require that when an immigration judge makes an adverse credibility finding that they go over item by item why they're not believing certain items of evidence. And in this case, not only did the judge not specifically make an adverse credibility finding, he didn't do that, and totally ignores all of the substantial documentation that's present in this case. It's our position that applying the standard of whether or not the adverse credibility finding is supported by substantial evidence in the record, that in this record it is not supported. It's not even close to being supported. And that – but for the adverse credibility finding that there was substantial evidence presented in the form of documentation and two witnesses of religious persecution based on him being a member of a minority Muslim group in Pakistan, which, despite their coup in 99 after my client left, continues to be substantially a fundamentalist Muslim country. What was the connection? Now, his sister testified about the parents' home being destroyed. What was the evidence that that was a religious persecution other than just ordinary vandalism or – Mr. – the petitioner testified that this was done by the soldiers of Islam. How did he know that? He wasn't there. He had left by then. He had never returned to the village. And I assume this is evidence presented by his parents, who later joined him at the second place where he lived, where I think the record showed that the Shia were about 20 percent countrywide of the population. But where he lived, there were 85 percent – it was 85 percent Sunni. Yeah. Well, I had a couple of other questions about the – we're really asked to evaluate the credibility finding, even though they don't use the word credibility, but the IJ didn't believe him. I mean, she said she wasn't – or he wasn't persuaded by the – his testimony. And the – one of the questions that I wondered about – now, the sister who did support him is already here and already has papers. Yeah, she was a resident alien. So she's okay. He testified that the reason he didn't go to the mosque was he didn't have a driver's license. And I had a little problem tying that connection up to why does it make any difference if you don't go to the mosque? She did support him in saying that she would see him reviewing Shia religious literature, Your Honor. He said he didn't even know where the mosque was if he – he was so religious that he was being persecuted, but he didn't even know where the Shia branch mosque was. I don't believe there's any reference in the record, Your Honor, to where the nearest mosque would be. Well, I just wonder if that doesn't – that kind of testimony doesn't give an IJ some reason to be a little dubious about this may be just another economic traveler who doesn't want to go back. Yeah. I believe in this instance, Your Honor, because of the substantial documentation that the IJ had to deal somehow with whether – for instance, he never indicated that he felt that any of the documentation was fabricated. Okay. Specifically, there's even a newspaper article that's – Okay.  Yeah. Thank you.  Good morning. John Williams on behalf of the government. Your Honor, substantial evidence, record evidence, supports the immigration judge's determination that the petitioner's testimony lacked credibility, and he thus failed to establish his eligibility for relief. The petitioner has not presented compelling evidence to this Court that the Court should overturn the immigration judge's decision. Here, the petitioner came to the United States to work, and not because of his political opinion or religion. The petitioner attempted to rehabilitate his credibility by attacking the other witnesses, but he does not dispute or dispel the inconsistencies that are present in his testimony, which led to the immigration judge's adverse credibility. His claim of persecution is based upon his being a Shia? That's correct, Your Honor. And the brother-in-law testified that he never converted? What did he say with respect to that? The brother-in-law testified that he did not convert. And if we back up and go over what had happened, at start, before – if you date back to 1990, the petitioner claims that he converted to Shia. Now, in 1992-93, Mr. Chaudhry, the brother-in-law, went to Pakistan to marry the petitioner's sister. At that time, he noticed no suggestion that the petitioner had converted to the Shia religion. He observed no suggestion that the parents had been subjected to or had mentioned anything about the Shia religion. Now, if we – Is that contradictory or is that just the absence of information? Well, it is – it goes to the claim that the petitioner claims that he was not only practicing the Shia religion. He was out front. He was – he was a leader in the community of over 300 persons. So this goes to – this goes to not only the adverse credibility, the lack of credibility on – I guess I don't see how the – how his testimony is really directly contradictory. If it were well known that you loved Italian food and someone who's known you a while said, well, I've never seen him eat Italian food, that's not really directly contradictory. And I guess that's my concern here is whether the brother-in-law's – he didn't really say, I know the opposite. He just said, I don't know that what he says is true. I'm not sure if I'm making my question clear, but it seems like the absence of information rather is. I think you are, Your Honor. And I would say it's not directly contradictory, but as we move forward through the record, taken as a whole, it supports the basis. It is substantial – it leaves a substantial record of evidence supporting the immigration judge's determination that this petitioner lacked credibility. So as I – as I move on through the record, the petitioner called – he called his brother-in-law and said, I wish to come to the United States to find work. At that time, he did not mention a basis of the Shia religion or persecution on that. So that is directly contradictory to the reasons why he came and sought asylum. Now, first, he didn't come to the United States. He went to Canada. And he failed to mention this in his asylum application. When he was in Canada, he sought political asylum in Canada based on political opinion, not religion. Now, he ultimately comes to the United States, and his brother-in-law, Mr. Chaudhary, learns that he's been seeking documents of the Ahmadi religion, not the Shia religion, but the Ahmadi religion. So now he's going to seek to establish a basis that he's – this infers that he's of the Ahmadi religious group, not the Shia religious group. During the time that he came over to the United States, when he came to the United States, his immediate plan was to obtain work, which he did, and to raise money, make money. He waited almost a year before he filed an asylum application. I'll note that Mr. Chaudhary says that during that time, he testified the Petitioner was – and the Petitioner's sister was – they were looking for women, girls, to marry. He was asked, you know, what was the Petitioner doing to – in regard to any asylum relief or staying in the United States, and he testified that that's – that he was seeking to find a girl to marry. He was also attempting to get documents of the Ahmadi religion from persons in Canada, and they said no. So when that failed, he then went off to try and attempt to get documents from Pakistan based on the Shia religion. So, again, the – when the Petitioner filed his asylum application, he checked political opinion, not religion. Religion was not checked as a basis of persecution. But between – at some point in time, he decided maybe my best bet is religion. So now we get to is he – did he convince the immigration judge of his credibility? And that – and whether he was a member of the Shia religion and practicing that type of religion? And it's clear, I think, from the record that the record supports – substantial record evidence supports that he lacked the credibility. Now, his family members are all Sunni Muslim, but somewhat – somewhere along the line, he chooses this Shia religion. And both the Petitioner's sister and Mr. Chaudhry observed the Petitioner while he was here in the United States. And their testimony was that he showed very little or no interest in religion whatsoever. He was asked if he attended mosques. The answer was no. And there are mosques in the area of Shia religion. Did he make contact with other members of the Shia religion sect? No, he did not. So, finally, the – as the government noted in its brief, he was asked multiple questions about his knowledge of the Shia religion, and the immigration judge found that it was lacking. And this goes not only to his credibility, but to the heart of his claim at this point that he was persecuted based on his religion. Finally, the State Department profile undermines the Petitioner's explanations of the Shia religion, that because the Pakistani government in the country report states that it's quick to respond to religious violence, and that the Shia – members of the Shia religion are not systematically discriminated against. I will note that the Petitioner counsel argued that at one point Petitioner claims that he was locked up and charged with a crime for inciting religious unrest. And what's notable about that is in the record at page 114, the response from the Petitioner, when asked about this charge of inciting violence, he responded, it's all lies, because I wasn't really a religious person. That goes directly to the heart of his claim. And I would ask and state that the Petitioner has not presented compelling evidence to overturn this immigration judge's adverse credibility finding, and ask that this Court would deny the petition for review and affirm the immigration judge's decision. Thank you, counsel. The case just argued is submitted for decision. The next case, Katan v. Ashcroft, is submitted on the briefs. It is so ordered. The next case for argument is Lopez-Menzor v. Ashcroft.
judges: Schroeder, Goodwin, Graber